29 C.C.P.A.(Patents)

## In re NALLINGER.

### Patent Appeal No. 4596.

Court of Customs and Patent Appeals.
April 27, 1942.

A. A. Dicke and C. Cornell Remsen, Jr., both of New York City (Miles D. Pillars, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting, for lack of invention over the cited prior art, claims numbered 7, 8, 9, 10, 13, 14, and 15 of appellant's application for a patent. No claims were allowed.

Claim 15 is illustrative of the subject matter involved and reads as follows:

"15. In combination with an airplane engine having a plurality of members to be lubricated, the combination of means for maintaining a constant supply of lubricant to said members, comprising a sump subject to variable atmospheric pressure and adapted to contain the necessary lubricant, a first conduit connected to the members to be lubricated, a pump the delivery of which varies with changes in atmospheric pressure, for supplying lubricant from said sump through said first conduit, said pump having such a capacity as to insure the necessary amount of lubricant despite a large decrease in atmospheric pressure due to the increased altitude of the airplane engine, a flow restriction device in said first conduit intermediate said pump and said members, whereby, above a predetermined atmospheric pressure, said device limits the flow of the lubricant supplied by said pump, a second conduit connecting the delivery side of said pump with said sump, pressure responsive means in said second conduit for automatically permitting excess pumped lubricant to return to said sump, and means driven by said engine for operating said pump."

The references cited are:

Wyss (Austrian), 47,862, May 26, 1911.
Pogue, 1,289,903, December 31, 1918.
Kleckner, 2,009,137, July 23, 1935.

Appellant's alleged invention is concisely described in the decision of the Board of Appeals as follows:

"The invention relates to a pumping system for supplying lubricant to an airplane engine. This pumping system includes a sump containing lubricant which is subject to atmospheric pressure. A conduit extends from the lubricant sump to the airplane engine. A large capacity suction pump is arranged in the conduit and sucks oil from the sump and forces it along the conduit. A second and smaller pump is arranged between the large capacity pump and the airplane. The large capacity pump

furnishes a sufficient supply of oil to the intake of the smaller pump at all times irrespective of the variations of the atmospheric pressure at different elevations of the airplane during flight. A by-pass is arranged to return excess oil from a point in the conduit between the pumps to the sump. A spring pressed valve is arranged in this by-pass so that the oil feeding into the smaller pump is always under considerable pressure.

"In one form disclosed, a hand adjusted valve is substituted for the smaller pump. This valve is adjusted so that the oil is forced through a valve at all times under considerable pressure by the large capacity pump.

"In both forms disclosed, sufficient oil will be supplied to the airplane irrespective of the variations of the atmospheric pressure."

The patent to Wyss discloses a multi-stage pump comprising two gear pumps connected in series, and states that the pump connected with the supply tank has a capacity in excess of the other pump. Between the two pumps there is connected a by-pass pipe for returning oil to the main tank, and this pipe contains an overflow valve, spring actuated. This spring pressed valve is so arranged in the by-pass pipe that the oil feeding into the smaller pump is always under some pressure. The first claim of this patent reads as follows:

"1. Multi-stage pump consisting of two or more series connected pressure stages which, provided invariable speed of revolution, deliver a quantity but little dependent on the manometric height of delivery, characterized in that each stage delivers less than the preceding stage and that the material in excess coming from the preceding stage is carried off through an independent overflow pipe line."

The patent to Kleckner discloses a multi-stage pumping system for supplying oil to oil burners. A large capacity suction pump is disclosed which supplies oil to a small capacity pump which feeds the oil burner. A by-pass is arranged between the pumps for returning to the supply tank the oil not passing through the second pump. The patent states that the pump which is connected directly to the supply tank delivers liquid at a rate considerably in excess of the capacity of the other pump. This patent does not disclose the employment of a spring pressed valve which is shown by appellant and also in the patent to Wyss.

The patent to Pogue discloses a lubricating system for machine bearings in which the oil is fed from the tank to a supply line which serves a number of bearings. There is provided a by-pass around the pump, with a relief valve placed therein to prevent the pressure in the pipe supplying oil to the bearings from rising above a certain degree when the engine is in operation.

It is our opinion that neither the Kleckner patent nor the Wyss patent anticipates appellant's structure.

The pumps disclosed by Wyss differ only slightly in capacity, and the employment of his device upon an airplane engine would not solve the problem of lubricating the parts of the engine at varying atmospheric pressures.

The patent to Kleckner would, in our opinion, fully anticipate appellant's device except for the absence of a relief valve in the by-pass pipe leading from a point intermediate the two pumps to the supply tank. The Kleckner patent states:

"The fuel pumps of the prior art have also had a relatively poor regulation in that the volume and/or pressure of the liquid delivered from the pump varied greatly with the amount of liquid in the supply tank; that is, the pumps of the prior art delivered the liquid fuel in greater volume when the tank was full than when the tank was empty, and the volume of liquid delivered by the pump also varied greatly with the resistance interposed by the nozzle of the burner or other apparatus.

\* \* \* \* \*

"Another object of the invention is the provision of an improved rotary pump which is adapted to effect a delivery of fluid at substantially constant volume and pressure throughout a considerable range of variation in the depth, pressure or head of the fluid at the intake end of the pump.

\* \* \* \* \*

" \* \* \* The low pressure pumping mechanism supplies an excess of liquid for the input to the high pressure side of the pump, and the excess is permitted to flow back to the tank. The high pressure pump stage is thus provided with a supply of liquid at a substantially constant pressure, and the capacity of the low pressure stage may be made such that there is always an excess of liquid to be returned to the tank, and consequently the pressure of the supply to the high pressure stage will not vary greatly."

The only problem before Kleckner was to effect a delivery of fluid at substantially constant volume and pressure, regardless of whether the supply tank was full or almost empty. This situation also confronted appellant, for the amount of oil in the supply tank for supplying lubrication to an airplane engine would also vary; but in addition thereto, appellant had the problem of very greatly decreased pressure upon the oil in the supply tank at very high altitudes, regardless of whether the tank is full or nearly empty.

Kleckner accomplished his object even though his by-pass afforded an unimpeded flow of the excess fluid back to the supply tank.

In order to solve the problem of supplying oil to the bearings at a constant volume and pressure, where the atmospheric pressure is greatly decreased, appellant employed a spring pressed valve in his by-pass. It is conceded that this did solve the problem.

The Board of Appeals, with respect to the structure disclosed by Kleckner, in its decision stated:

"The patentee shows a low pressure pump at least three times as large as the high pressure pump. The patentee clearly contemplates providing a sufficient supply to the smaller pump at all times which is the purpose of applicant. The large capacity pump is so large that it will supply a sufficient amount of oil to the smaller pump irrespective of atmospheric conditions. If it is desired to maintain the oil under a considerable pressure so as to insure an oil supply at different altitudes, a spring pressed valve can be applied to the by-pass as is done in the Austrian patent."

We construe the last quoted sentence as a holding by the board that it would be obvious to one skilled in the art, with the Austrian and Kleckner patents before him, to place a spring pressed valve in the by-pass shown by Kleckner.

Appellant's problem was to provide for a constant supply of oil at a constant pressure to his second pump at times when there was a very low pressure upon the oil entering the conduit conveying oil from his supply tank to his first pump. It was obvious that the pressure would be much less at high altitudes than at sea level, and that the pump shown by Kleckner could not be relied upon if used upon an airplane flying at high altitudes. It was also obvious that the reason that it could not be so relied upon was because there was an unimpeded flow through his by-pass to the supply tank.

The means by which the Kleckner structure could be modified to enable it to function at extremely low initial fluid pressures, viz., the placing of a spring pressed valve in the by-pass conveying excess fluid back to the supply tank, is clearly shown in the Austrian patent to Wyss.

This is what, in effect, appellant did, and in our opinion there was no exercise of the inventive faculty involved in doing so.

The patent to Wyss involves the same art, and he placed his spring pressed valve in his by-pass to regulate the pressure to his second pump. It is true that neither Wyss nor Kleckner contemplated the use of their pumps in airplane engines, but both did contemplate stabilizing the pressure upon the fluid supplying their second pumps. Kleckner did not provide for such extremely low pressure as would be encountered in high altitudes, but Wyss, by the use of his spring pressed valve in his by-pass, permitted the building up and regulating of pressure upon the fluid supplying his second pump.

It was the problem of building up and regulating the pressure upon the oil that confronted appellant, and that problem was solved, in what we think was an obvious way, by utilizing the spring pressed valve disclosed by Wyss in the by-pass disclosed by Kleckner.

It is conceded by appellant that claim 15 is the basic claim, and that all of the remaining claims are dependent thereon; therefore, separate discussion of the claims is unnecessary.

In view of our finding that the claims are unpatentable in view of the references to Kleckner and Wyss, it is unnecessary for us to discuss the reference to Pogue.

For the reasons herein stated, the decision appealed from is affirmed.

Affirmed.